UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

JAMES EUGENE ALLMAN, JR.                                                    PLAINTIFF

V.                              No. 2:20-CV-137-JTR

KILOLO KIJAKAZI, Commissioner
Social Security Administration[1]                                           DEFENDANT

## ORDER

### I. Introduction

Plaintiff, James Eugene Allman, Jr. ("Allman"), applied for disability benefits on December 14, 2017. (Tr. at 10). After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application on August 29, 2019. (Tr. at 21). The Appeals Council denied Allman's request for review (Tr. at 1), making the ALJ's denial of Allman's application for benefits the final decision of the Commissioner.

Allman filed this case seeking judicial review of the decision denying him benefits. For the reasons stated below, the Court[2] affirms the ALJ's decision.

### II. The Commissioner's Decision

The ALJ found that Allman had not engaged in substantial gainful activity since the application date of December 14, 2017.[3] (Tr. at 12). At Step Two of the

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).
[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. (Doc. 4).
[3] For supplemental security income benefits, the beginning of the relevant time period for determination of eligibility for benefits is the date that the application was filed. (Tr. at 11).

five-step analysis, the ALJ found that Allman had the following severe impairments: obesity, lumbar degenerative disc disease, arthritis, hypertension, history of arrhythmia, and personality disorder. (Tr. at 13).

After finding that Allman's impairments did not meet or equal a listed impairment (*id.*), the ALJ determined that Allman had the ability to perform work at the light exertional level, except that: (1) he could only occasionally climb ramps and stairs and stoop, kneel, crouch, and crawl; (2) he could only occasionally be exposed to extreme heat, extreme cold, and vibration; (3) he could never climb ladders, ropes, or scaffolds; (4) he could never be exposed to unprotected heights; and (5) he could understand and remember simple instructions and could sustain attention to complete simple tasks with regular breaks every two hours. (Tr. at 15–16).

The ALJ determined that Allman did not have any past relevant work. (Tr. at 19). Relying upon Vocational Expert ("VE") testimony, the ALJ found that, based on Allman's age, education, work experience, and residual functional capacity ("RFC"), jobs existed in significant numbers in the national economy that he could perform, including positions as marker, sales attendant, and cashier II. (Tr. at 20). Thus, the ALJ concluded that Allman was not disabled. *Id.*

### III.  Discussion

**A.  Standard of Review**

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in

the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

### B. Allman's Arguments on Appeal

Allman contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that the ALJ: (1) did not properly assess his RFC to account for his limitations; and (2) erred in discrediting the opinion of his treating physician. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). The RFC is a medical question which must be supported by some medical evidence regarding a claimant's ability to function in the workplace, but the ALJ may consider all record evidence in its analysis. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). Allman states in conclusory fashion that the combination of his impairments prohibits work at the light exertional level. In support, he summarizes much of the medical evidence in the record, including MRI results demonstrating arthritis and degenerative disc disease in his lower back (Tr. at 464); MRI results evidencing a possible stroke or bleeding in the brain on the right side at some point in the past (Tr. at 463, 465); and results from a neuropsychological evaluation which indicated

"mild retrieval weaknesses" but found such abilities to still be intact (Tr. at 560). He points to diagnoses of osteoarthritis of multiple joints, hypertension, chronic pain in his right shoulder and back, poor memory, and bilateral knee pain. He also notes his recurrent arrythmias, elevated blood pressure, and episodes of tachycardia. However, he does not provide analysis as to how any of this evidence warrants additional limitations in his RFC, nor has he suggested what those limitations might be. *See Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (burden is on claimant to establish RFC).

Allman does seem to suggest the ALJ failed to consider his obesity when fashioning his limitations, but the Court finds that this was not the case. The ALJ determined Allman's obesity to be a severe impairment and considered it in terms of its possible effects on Allman's ability to work and perform activities of daily living. (Tr. at 14). The ALJ determined that the associated signs, symptoms, and laboratory findings were not severe enough to meet any listing, but specifically noted that Allman's RFC reflected limitations due to his obesity. *Id*. Ultimately, the ALJ properly considered Allman's obesity and determined no additional limitations were warranted beyond those included in Allman's RFC. Allman has failed to demonstrate that the RFC does not adequately address the functional effects of his obesity.

The same holds true for the ALJ's assessment of Allman's other impairments. In determining Allman's RFC, the ALJ considered each of Allman's complaints and discussed the evidence at length, including evidence which detracted from his decision. He noted that, despite Allman's complaints about back pain that increased with bending, physical examinations generally showed normal strength, normal reflexes, negative straight leg raise and a normal gait. (Tr. at 17, 348–49, 363–364, 422, 436, 550). The ALJ did note that at times Allman showed a limited range of motion and pain with facet loading, and that he was prescribed medications and tried physical therapy and injections. (Tr. at 17, 434, 451). As for Allman's arthritis, the ALJ noted his complaints of shoulder pain and clinical findings including painful range of motion and crepitus (Tr. at 401–403), but also cited generally normal exam findings concerning Allman's range of motion, strength, reflexes, grip, sensation, and coordination. (Tr. at 17, 363, 401). The ALJ acknowledged Allman's blood pressure and episodes of tachycardia but found that examinations generally showed normal heart function with a normal rate, normal rhythm normal peripheral pulses and no murmurs. (Tr. at 17, 436, 550, 553). The ALJ found the diagnostic imaging "corroborated the examination findings, revealing no acute intracranial hemorrhaging, microvascular ischemic changes, but with a normal EEG and normal stress test." (Tr. at 17, 423).


As for mental impairments, the ALJ noted Allman's complaints of memory problems, being distracted, confusion and fatigue, but found that "despite these allegations, [Allman] was generally noted to be alert, appropriate, pleasant and cooperative with normal judgment, an ability to follow instructions, normal fund of knowledge, normal comprehension and normal cognitive abilities." (Tr. at 18). The ALJ also cited "less optimal findings," "including at times appearing disheveled with mild retrieval difficulties, memory concerns, difficulties following direction and indication of working best with repetitive tasks." (Tr. at 18, 377–378, 560).

The RFC is also supported by opinion evidence from several medical sources. The ALJ considered the opinion of consultative medical examiner Sudhir Kumar, M.D., who opined Allman would only have mild limitations in physical functioning due to his physical conditions. (Tr. at 18, 361–365). The opinion was based on a physical examination and the ALJ found it persuasive, though it did not provide a detailed assessment of specific functional abilities and limitations. (Tr. at 18). Two state agency medical consultants opined that Allman could perform a range of medium exertion work given his complaints of low back pain but generally normal exam findings. (Tr. at 18, 78–79, 102–104). The ALJ found their opinions partly persuasive but further limited Allman's RFC to light exertion work with additional limitations based on later provided medical evidence and Allman's hearing testimony. (Tr. at 18).

The ALJ also carefully considered medical opinions regarding Allman's mental limitations. He found persuasive the opinion of Christopher Bassin, Psy.D., who conducted a neuropsychological evaluation and determined Allman's cognitive abilities were within normal limits, with mild retrieval weaknesses, but abilities still considered to be intact. (Tr. at 560). Clinical psychologist Kenneth B. Jones, Ph.D., a mental consultative examiner, found that Allman presented with an average level of cognitive functioning and average attention and concentration ability; that Allman understood basic instructions without need for explanation; that Allman appeared capable of completing basic repetitive tasks; and that he could complete tasks in a timely manner if not limited by his physical abilities. (Tr. at 377–378). The ALJ found this opinion to be consistent with limitations in Allman's RFC limiting him to performing simple instructions and tasks with persistence for up to two-hour periods consistent with normal breaks. (Tr. at 19). State agency psychological consultants opined Allman's diagnosed personality disorder was not severe and caused no more than mild functional limitations, but the ALJ found these opinions unpersuasive based on the examining physicians' assessments. *Id*. The ALJ thus found Allman's personality disorder to be a severe impairment with up to moderate limitations in mental functioning as set forth in the RFC. *Id*.

Allman argues the ALJ erred in discrediting the opinion of his treating physician, Yasir Afzal, M.D., who filled out a one-page checkbox form wherein he

checked boxes indicating Allman was "unable to work at this time" and that Allman had limitations in memory, sitting/standing, stooping/bending, balance, unscheduled breaks, and trouble following directions. (Tr. at 18, 404). But checkbox assessments that do not cite medical evidence and provide no further elaboration "possess little evidentiary value." *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (internal quotation omitted). In this case, the ALJ found the opinion unpersuasive because it provided no explanation for the boxes checked and was generally inconsistent with the record, including Dr. Afzal's own treatment notes.[4]

The ALJ found that Dr. Afzal's conclusion that Allman was "unable to work" was inconsistent with the record evidence showing modest, conservative treatment for Allman's back pain but otherwise generally benign findings on examinations and modest findings on imaging. (Tr. at 18, 392, 402). The ALJ also found that Dr. Afzal's opinion that Allman would have trouble following directions was not supported by Dr. Afzal's treatment notes, which showed Allman generally denied such problems (Tr. at 18, 380, 384), and found that Dr. Afzal's opinion primarily

---

[4] Allman argues the ALJ should have given Dr. Afzal's opinion "controlling weight," but the Administration has promulgated new regulations governing how ALJs assess medical opinion evidence for claims, like Allman's, which were filed on or after March 27, 2017. The new rules focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant; (4) provider specialization; and (5) any other important factors. *See* 20 C.F.R. § 416.920c. An opinion is persuasive if it is sufficiently relevant to and consistent with the medical evidence as a whole. *See Phillips v. Saul*, No 1:19-CV-00034-BD, 2020 WL 3451519, at *4 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*.

9

relied on statements from Allman and his mother. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (ALJ entitled to give less weight to opinion based on subjective complaints rather than objective medical evidence). The opinion was also inconsistent with other treatment notes indicating normal thought processes, normal comprehension, normal attention span, and overall average cognitive functioning. (Tr. at 18, 377–378, 560). The ALJ's explanation is well-reasoned and detailed, and the Court finds no error in his decision to discredit Dr. Afzal's opinion.

Based on the foregoing, Court finds that the ALJ carefully considered all of the relevant medical and non-medical evidence in assessing Allman's limitations and concludes that the RFC determination is supported by substantial evidence in the record.

## IV. Conclusion

For the reasons stated above, the Court concludes that the ALJ applied proper legal standards and substantial evidence on the record as a whole supports the ALJ's decision. The finding that Allman was not disabled within the meaning of the Social Security Act is hereby AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 21st day of September, 2021.

_____
UNITED STATES MAGISTRATE JUDGE